v. A T and T Mobility Services, LLC for Memphis City Tenants to the plaintiff's office of the D.C. Sheriff, and the victim as a defendant, Mr. Sanders and Mr. Kowalski. May it please the court. We thought you just liked us. I do, I do, but I thought I'd stick around for this one too. I'd like to request to reserve two minutes for rebuttal, please. Again, if the court will allow, I will forego reciting the facts. I'm confident you've read the briefs and jump right into the argument. It is plaintiff's contention that Mr. Gleed is disabled in accordance with the ADA. I think that it's important first to note that the defendants state in their brief on page 13, footnote 9, that they are not disputing Mr. Gleed's protected class status. What that means, I believe, is that they are not disputing that Mr. Gleed is indeed disabled. The ADA defines disability as a physical or mental impairment that substantially limits one or more of the major life activities of the individual. So for them to state that they are not disputing his protected class status, I believe they have waived any argument to suggest that he is not entitled to accommodation. But assuming the court feels otherwise, I would like to go on and say that as it relates to him being disabled, there are two untrue propositions that the defendants put to the court that are the crux of their case. Particularly, the defendants state on page 21 of their brief, quote, Gleed did not testify that he experienced pain so severe that it affected his ability to perform his job. Additionally, they state, page 25 of their brief, quote, Gleed has presented no evidence that his condition was exacerbated because he was not allowed to sit when he needed. To the contrary, as it relates to his cellulitis, Mr. Gleed testified at ID page number 424, throughout the day, as the day goes on, the longer I'm on my feet, the more fluid collects in my legs and the bigger they get, they stretch, the more discomfort and the more painful it is. Additionally, Mr. Gleed testified as it relates to his psoriasis or eczema at ID page number 426, so the more I stand and walk around, the more chance of it rubbing against my shoe and cracking and staph gets in there and causes staph infections. That's why I get so many infections. He went on to say, ID page number 426, deposition at 117, so the longer I stand, the more it swells up. The more it swells up, the more pressure it puts up against my shoe. So clearly, Mr. Gleed testified that his disability affected his ability to work. Moreover, Mr. Gleed testified that his pain was exacerbated, wherein more often than not, he was not afforded the 15-minute breaks that were to be customary in his job. He states that at page ID 408. So I believe that it is clear that Mr. Gleed is a qualified individual. The term qualified individual meaning an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. The defendants suggest that because Mr. Gleed testified that he could perform his job and that he did perform his job, therefore he is not entitled to accommodation. Unfortunately, the defendants nor the lower court dropped the other foot. Mr. Gleed clearly stated in his testimony, referring to page ID number 426 and 431, as far as my condition goes, I'm able to do that job with accommodation or without accommodation, and I did it. But without accommodation, the pain and suffering was much greater. Clearly, Mr. Gleed has testified and has exemplified that he has a major life activity, that being working, walking, and standing, that is affected by his disability. Mr. Sanders, can you just tell me what page were you reading from there about I did it, but the pain? Sure, I'm referring to Gleed deposition at pages 114 and 136, ID page number 426 and 431. What we know is that our Supreme Court, referring to Bragdon v. Abbott, 524 U.S., 624, 1998, has indicated that substantially limits does not mean a complete inability to perform a major life activity. Additionally, the Code of Federal Regulations, 1630.2, tells us that substantially limited is not meant to be a demanding standard. Here we have a man who has requested accommodation, and that accommodation has been denied. The defendants maintain allegedly that, well, no, we didn't deny it. He was told he could sit. But the testimony of Mr. Gleed is corroborated by his coworker, Mrs. Witt. Mrs. Witt states, I was there. I heard the conversation. Mr. Gleed asked to sit. He was told that he couldn't sit. I was sitting because I was pregnant. He was told that he could only sit if, indeed, he was pregnant. The defendants had an obligation to provide Mr. Gleed with a reasonable accommodation. A reasonable accommodation has been defined as one that allows the employee to enjoy equal employment opportunities. Such things as part-time or modified work schedules or acquisition or modifications of equipment have been found to be reasonable. 29 CFR 1630.2. Is that the specific provision you're saying is violated here? I mean, so you're saying what the employer violated when they would not make the accommodation about sitting is reasonable accommodation as set forth in the statute and specifically as that statutory term is defined in the CFR provision you just referenced. That's what you're focused on? Well, certainly as it relates to his first request for accommodation, I'm saying that to not accommodate him was definitely unreasonable and, additionally, that a reasonable accommodation would have indeed been to allow him to have sit. And I believe we cite reasonable accommodation. Right. I see that my time has expired. I'd just also like to say if I can't take your two-minute rebuttal time, I'll sit down. Thank you, Your Honor. Good afternoon. Good afternoon. May it please the Court, my name is Donna Brusoski, and I represent the Equal Employment Opportunity Commission. I would like to highlight three legal errors in the district court's analysis of the failure to accommodate claim in this case. I'll just list them and then we can talk about them. The first was the district court erred in ruling that AT&T did not need to consider periodic sitting accommodation for Glead in brief. The court said no accommodation was necessary because Glead could do his job functions without an accommodation. But our position is if doing his job without an accommodation means that an individual is in pain related to his disability, then the employer should consider an accommodation, period. And so would you agree then with Mr. Sanders that the provision of the ADA that the employer violates, in your opinion, is the one that imposes the duty to make reasonable accommodations? Yes. And it's specifically reasonable accommodations as defined by CFR 1630.2? I'm just trying to be clear. It's not a trap. I'm just trying to be clear about which provision. CFR 1630.2, though, contains way more information than you're looking for. It's really 30.20. 01 or something. O is for reasonable accommodation. That's very good. What would you say? I mean, well, why don't you finish your recitation and then I'll ask you. I'll just tell you the other two errors that we're concerned about and then move forward with the first point. Second, the district court erred in ruling that Glead did not effectively request an accommodation because he didn't follow all of AT&T's special procedures. The commission's position is Glead satisfied his obligation under the ADA to provide notice. That's the requirement in the commission's guidance. Notice to his employer when he asked his employer for the sitting accommodation, which his supervisor denied. Third, the court erred in ruling that AT&T's offer of unpaid leave was a sufficient alternative accommodation to Glead's request for a schedule modification for medical treatment of a life-threatening infection. Sorry. Okay. Going back to whether, I mean, let's say an employee can do their job, but absent sitting in a chair, it's really painful. So, yeah. I mean, is it physically possible? If you have the willpower of Lawrence of Arabia or something to endure this, yes, but it's really painful. You say if the employer doesn't let the employee sit, that's a violation of the reasonable accommodation. It's a failure to make reasonable accommodation, which is a violation of the ADA. So is that something we would just sort of read as implicit in the word reasonable? Or, I mean, I'm just looking at the provision that talks about, and I don't have it right in front of me. Actually, it's a little more complicated than just one part of the statute. Of course, a person with a disability doesn't get to be a person with a disability under the ADA unless they meet certain standards, one of which is that they have a disability that's recognized under the statute. After the ADA Amendments Act in 2008, the definition of disability has broadened substantially. Well, I mean, I think AT&T stipulates he's a person with a disability. Right. So that's not a problem here. But the other issue that was not addressed here is the standing request only becomes a problem if standing is an essential function for Glead in his prior job. And that was not argued here. Right. It wasn't decided here, certainly. So if standing was not an essential function and what he needed was to sit periodically, well, that should be the end of the case, but there is more. I guess I'm trying to, you know, identify what statutory language is violated. I mean, as a matter of common sense, what you just said makes sense. The statute says modifications or adjustments to the work environment or to the manner or circumstances under which the position held or desired is customarily performed that enable an individual with a disability basically to do the job. That's kind of what they have to do. Right, that's one provision. I'm sorry, there's a second part. What I'm trying to ask you to speak to is able talks about being able as opposed to being more comfortable, but maybe it doesn't mean that. Well, first, we would say it doesn't mean – actually, I don't know how to exactly direct the answer to your question, so I'm just going to say it. Sure. First, to the extent an employee is having symptoms exacerbated that are related to the disability and they're causing discomfort, we've argued in our brief that a minor discomfort or trivial discomfort doesn't rise to the level that it needs to be attended to, but AT&T and the district court both found that where pain is concerned, at least, the pain has to rise to a level that it's substantially limiting by itself, and that standard is not. It's too high. The disability exists, and the pain is a result of the disability and the employer's requirements in performing the job, but he's already had to show that he's substantially limited in performing a major life activity to meet the statutory definition of disability. So whatever his leg conditions are, they substantially limit him in standing. Any consequences, symptoms, pain that flow from that disability, an employer is obligated to respond to. Okay. I have a red light. All right. Thank you very much. Thank you. May it please the court. My name is Laura Linder, and I represent the Appellee AT&T Mobility. From the outside, it's important to note that the arguments that counsel for Mr. Glead made, arguments that counsel for the EEOC just made, really have been waived. The arguments that the EEOC has proffered were not made below to the district court. They may have been made for the first time on appeal, and there's authority that an amicus party can't come in at the appellate level and raise it. Which argument in particular? First of all, the arguments relating to sitting and this notion that you have to accommodate somebody just because they may be in greater pain. Well, I mean, you might have to sort of liberally construe the argument, but certainly he complained a lot about standing causing him pain. Fair in the district court? He raised the issue, at least his testimony in describing his condition in his deposition, that it did. He didn't complain to AT&T. I'm not talking about complaining to AT&T or depositions. I'm talking about arguments to the district court. In his briefing to the district court, it seemed to me, I want to give you a chance to, you know it better than I do, it seemed to me that factually he's complaining a lot about the pain caused by standing. And then in the argument section, I will grant you, it is very general. It is basically just talking about the requirements of the statute. But if you read that in light of what he's complaining about in the facts section, isn't it fairly clear that he is making a claim based on the pain caused by standing? He raised the issue of pain in connection with defining his condition as a disability, but he didn't make the connection that because I may be in greater pain at work, I'm entitled to an accommodation, particularly because it's undisputed that he got breaks during his work time. He got two 15-minute breaks. He got a 30-minute meal break. And he, I guess, I don't agree that the connection was made sufficiently so that the waiver. Do you think the district court would be blindsided by the idea that he's making this argument? I mean, I just, it seems. I wouldn't say that.  I think the argument that's been more clearly waived is the one that the EEOC raised as .3, which is that the offer of unpaid leave was not reasonable, which I can address. That was something that certainly wasn't raised below. But beyond the waiver arguments, it's our position that the district court got it right. There's two different accommodations here. There's the sitting accommodation and then the IV treatments issue. With respect to the. . . I know that you said that he got opportunities to go to 15-minute breaks and there was a luncheon break. But apart from that, is there any evidence in the record that he was given any sitting accommodations pursuant to the note that he gave from the doctor saying that he should be allowed to sit? So there's a discrepancy here. The manager's testimony was he got the note and he told Mr. Glead he can sit whenever he needed, and that he did. Mr. Glead says, no, I wasn't given that option. But what the record does reflect is Mr. Glead said, well, sometimes I took my 15-minute break, sometimes I didn't. I usually did take my 30-minute lunch break. But he never said I was deprived of any of those breaks, and he never said because I didn't get a particular break it exacerbated my health condition. The note he turned in merely says he needs to sit as needed. There's no medical testimony that sitting as needed required more than the breaks he already was given. In fact, That's the point. The breaks that he was getting are the breaks that everybody was getting, and he would need a doctor's excuse to sit during the 15-minute breaks and the 30-minute lunch break. And we don't know whether the health care provider who filled out that note knew he got those breaks or didn't get those breaks. That's not in the record. So the health care provider might have assumed there's nothing as far as a break schedule, so I'm going to write you a note that says sit as needed. Importantly, what the record does reflect is at the end of June, when he had an incident that required IV treatment, he got a note that records say he needs to sit every two hours. Well, that's exactly what his breaks that he was given would have allowed him to do because he could have taken one every two hours, either the 15 minutes or the 30 minutes. Didn't AT&T have an obligation to start this interactive process once he asked to sit? You have a chair on the sales floor? Well, and from the company's perspective, the manager said you can sit and you can bring a stool out here, and the manager testified I said he could and I saw him do that. So we do have. That must be contested. It's contested. So, I mean, you know, for summary judgment, that's out the window. So what else do you have in response to my question? So, I mean, our perspective is the interactive dialogue could end then, if it's true that our manager said. There wasn't any interaction. He said I need to sit more. He showed a note, and the response was no, you're not. So that's not. I don't think that's what they mean by interaction, right? Right, and if that's true, then one would have to accept, you know, if you have to accept those facts, then you'd have to say that the employer denied the accommodation and there was no interactive dialogue. So would you agree then at least that the part of the. . . I mean, the district court had two grounds for its holding here. One is he didn't need it. Number two is he didn't give proper notice. Would you agree the second ground, on summary judgment at least, is not tenable? If you. . . Accepting the facts as he stated them, that the manager refused, yes. I mean, you know, which we have to. A jury may well take a very different view. They might not believe him, but I understand that the court has to accept the facts in the light most favorable to Mr. Glead. I think, though, that the claim then falls, Your Honor, on the other issue, which is he didn't need the accommodation. Now, Attorney Sanders is correct. He pointed to the proper pages in the deposition where Mr. Glead testified he was able to perform the job with or without accommodation and did it, and then said, well, but without the accommodation, the pain and suffering was much greater. Your Honor was asking, okay, what prong of the accommodation obligation are you hanging your hat on? And there are multiple. The one that Mr. Glead is alleging is, I was entitled to an accommodation because otherwise I was unable to do my work, unable to do my job. There is an accommodation obligation in the public accommodation arena where you have to make facilities accessible. There also is an accommodation obligation that requires employees to have equal privileges of employment. Isn't that what he's arguing? He's not. He's not. He's arguing that I needed this accommodation to be able to do my job. He's not arguing I didn't have access to the facility. He's not arguing I didn't have the same privilege of employment that everybody else did. But he is arguing that he didn't have the same ability to sit as the pregnant woman had. With respect to a reverse gender discrimination claim, but that doesn't relate to the duty to come. But that's just saying, though, that he didn't have, there was somebody else in the workplace who needed an accommodation, a pregnant woman, and that employee was accommodated. Then he's saying, in the workplace, I need accommodation, and you're denying me that. What do I have to do? Well, the problem with what the record lacks here is actual proof that he needed that accommodation. All he said was that I was in some greater pain. He doesn't say the pain rose to the level of I couldn't work or I needed to take a leave of absence. I mean, there is some corroborating evidence. If the man's legs swell up to the point that it creates these infections, that is evidence that he's also in pain, isn't it? It could be, but again, there's no connection between the lack of sitting and that happening. I mean, he's got a condition that could happen because he's testified too. There's records that if he scratched the psoriasis, that caused infection. He said his legs get bigger as he stands. And he said they crack open, they rub against his shoes, and that makes me more vulnerable to staph infections, and that's why I have so many staph infections. I need to sit. Then there should be evidence in the record that says because I wasn't able to, I actually sat down at work and I got reprimanded for it. Or I had to take a leave of absence because my legs got so sore that I couldn't work the next day. There needs to be proof that because this combination was denied, it made him unable to work. He could have testified very differently. You say unable to work. Are you familiar with this Feist case out of the Fifth Circuit? No. They take a different view of the statute than you seem to. I mean, as I understand your argument, I want you to tell me if I'm misunderstanding your argument. Your argument is one of strict necessity. If the employee is physically able, if a tough-minded employee would be physically able to gut it out and do the job, notwithstanding the pain, no accommodation necessary. That's not exactly our position. We're not saying it has to be physically impossible. But you have to have some evidence, either testimony, medical evidence, that because you didn't get the accommodation you asked for, that it somehow materially limited your ability to do your job. Mr. Glead could have testified very differently. And if he portrayed himself as the guy who could gut it out and do the job, that's how he portrayed it. The court has to accept how he testified that he worked. He didn't say, you know, I gutted it out and I otherwise developed this infection and because I didn't sit on this particular day, here's what happened. He talked about his condition very generally. He has a job that requires him to spend a lot of time on his feet, but he's made no connection between them. Didn't he claim that because he was denied a schedule modification and go to treatment that he couldn't continue with the job, or at least that's around the time he quit the job. But all of these things, I would guess, would be viewed together instead of separating them into his schedule modification requests as opposed to whether he was getting too much pain or how much time did he get to stand or not. There is some evidence in the record that the employer wanted him to stand or wanted the employees generally to stand all the time if they could. So there's a mishmash of different allegations there as to how the work conditions were affecting his alleged disability. And it's correct, Your Honor, that he asked for this sitting accommodation and then seven months later got an infection and raised an issue with respect to that. But for seven months he worked without any complaint, any further request for any kind of accommodation. At the time he was told he had to get these IV treatments for an infection, he claims, and again, the company's testimony of these conversations didn't occur, but taking the facts, as Mr. Glead has asserted, he says he went to his supervisor and said, I need these IV treatments, will you adjust my schedule? He claims his supervisor said no. But then he called HR, and he called HR with his supervisor on the phone, and what he said to HR in that conversation is very important. What he conveyed to HR was, I need daily IV treatments for up to four to six weeks, and said, what are my options? Well, in response to that, the HR person said, well, you can take FMLA leave and you may also qualify for short-term disability benefits in connection with that. Now, we don't know how the HR person interpreted any of that because from the company's perspective this conversation didn't occur. They have no record of him contacting HR. So in response to that call, they offered him leave. That is a reasonable accommodation. This court in Hankins v. The Gap, 84F 3rd, 797, 1996, a decision that this court has affirmed multiple times since then, said that the employer providing the accommodation has the ultimate discretion to choose between effective accommodations and may choose the less expensive accommodation or the accommodation that it is easier for it to provide, citing the EEOC's interpretive guidance of its own implementing regulations. Given what Mr. Glead himself says he told HR, I need daily IV treatments for 4 to 6 weeks, what HR offered him, which was leave, is a reasonable accommodation. Now, he admits he didn't say to HR, well, what about adjusting my schedule? And then at that moment he decided just to quit. That's undisputed. After this HR conversation, I think within minutes, he decides, well, I'm just going to quit. I have this other employment opportunity. And he sends an email telling his manager he was the best manager and was very thankful for the job. It seems like he ended the interactive process. He ended the interactive process, which is fatal to his claim. And the circuit law makes clear that the employer is not liable when the employee is responsible for that breakdown. He could have said to HR, well, okay, I don't really need leave. I want a schedule adjustment. But he didn't do that. He decided immediately to quit. So you can't accept the EEOC's third argument, which is the employer still had the opportunity to glean that he wanted a schedule. The HR person had to glean he wanted a schedule adjustment. And that needed to be provided because then the courts are in the position of trying to decide, well, what's more reasonable? And that's not what this court has said. That's not what the EEOC has said. The EEOC says as long as you're offered a reasonable and effective accommodation, that's good enough. And in this kind of case, it would be splitting hairs. But in addition to that argument, I think we also have the defense that he's responsible for the breakdown of that interactive process. And both of those things are failures to the accommodation claim with respect to IV treatments. I'd like to ask you, I know you've got the yellow light, but I'd like to ask you real quickly, again, about the standard. You say it's not strict necessity, but they have to show that the disability would materially impair. If the person has this sort of leg condition and the manifestation is pain while you stand, and, again, he can do it, but it's very painful, is that materially impair? Or when does that kind of pain become materially impair, even though he can still do it? When he actually explains that that's the case. All he said was, I'm in greater pain. It sounds like a notice requirement, though, rather than an impairment requirement. I don't think it's necessarily notice to the employer, but if you're going to prove I've been denied a reasonable accommodation, you've got to establish that because I couldn't sit more often, that somehow affected my ability to do my job. And that's the evidence that's absolutely missing from the record. And I think if you accept the position of the EEOC and the plaintiff, you're then in this world where somebody comes forward and says, I'm merely suffering greater pain, or the fact or the risk that my symptoms might be exacerbated triggers the accommodation obligation. And that would be a really difficult standard for employers to live with. It would create a huge burden, and I don't know how the courts could decide, okay, how much pain is too much. You're now going to become the arbiters of pain in a very subjective area of even just medical testimony. I see that my time is up. Thank you very much. Thank you. Several points that I would like to address. First, as it relates to whether or not Mr. Glee testified that he didn't get his breaks, referring to page 43 of his deposition. Question, 30-minute unpaid lunch and two 15-minute paid breaks during each 8-hour shift? Answer, more often than not, we didn't get our breaks. Additionally, it has been implied that when Mr. Glee spoke with HR, he did not delineate to HR that when he had his conversation with his boss, Eric, Eric had said, we won't adjust your schedule. It's been suggested he only gave some peripheral knowledge of his condition. Referring to Mr. Glee's deposition, page 78. Mr. Sanders, since we're short on time, let me ask you, with the chair accommodation, he works for seven months after he gets turned down on that. Am I correct in my recollection on that? That is correct. Okay, and so your theory, I guess, would be that it's the pain and suffering that he endures during those seven months that are his damages during that period? Is that, I mean, because otherwise it's like, you know, what are the damages? I mean, it would be the pain and suffering? Well, I don't think his damages are limited to that seven-month period, but my contention is after he is denied the request for accommodation, which the employer is obligated to give him, that his damages have continued from that point forward. But I'm talking about in those seven months, what are his damages? In those seven months, his damages are emotional distress, mental anguish, pain and suffering. And, Your Honor, you had addressed the issue or asked as it relates to the definition of accommodation and where it might be found in the Code of Federal Regulations. An accommodation is defined as any change in the work environment or in the way things are customarily done that enables an individual with a disability to perform the essential functions of their job, 29 CFR Section 1630.201, or to enjoy equal benefits and privileges of employment. I did get that answer. Okay. I'm not good with that. Additionally. I know you're out of time, but let me ask you this. What do you have to say about this claim that your client ended the inactive process when he resigned? Well, again, Your Honor, it's our contention that he was constructively discharged. Well, if we don't agree that he was constructively discharged, where would that leave you in terms of whether he prematurely ended the inactive process? Sure. I don't believe that there was an interactive process, nor do I believe that after the June 12th conversation that giving him an unpaid leave was a reasonable accommodation. I believe if there had been an interactive process, there would have been consideration as to what are the potential available options for accommodation. He had informed them that he wanted this schedule changed. There was seemingly, from my observation or the record, there's no weighing or consideration as to how they may accommodate him with that as compared to how they may accommodate them with what they call an accommodation and terminating him for a period of time until they make a decision as to whether he should be compensated. I don't believe there was an interactive process. All right. Thank you for your time and your consideration. Thank you very much. The case is submitted. There being no further questions.